Slip Op. 19 - 81

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARKEMA, INC., THE CHEMOURS COMPANY FC, LLC, HONEYWELL INTERNATIONAL INC.,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant. | **PUBLIC VERSION**<br><br>Before: Leo M. Gordon, Judge<br><br>Court No. 16-00179 |

**OPINION**

[ITC's Second Remand Results sustained.]

Dated: July 3, 2019

　　　James R. Cannon, Jr. and Jonathan M. Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, DC, for the Plaintiffs Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc. and Plaintiff-Intervenors The American HFC Coalition, and its Members.

　　　Patrick V. Gallagher, Jr., Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant United States. With him on the brief were Dominic L. Bianchi, General Counsel, and Andrea C. Casson, Assistant General Counsel for Litigation.

　　　Ned H. Marshak, Max F. Schutzman and Jordan C. Kahn, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, for Defendant-Intervenors Shandong Dongyue Chemical Co. Ltd., Zhejiang Sanmei Chemical Ind. Co., Ltd., Sinochem Environmental Protection Chemicals Co., Ltd., and Zhejiang Quhua Fluor-Chemistry Co., Ltd.

　　　Jarrod M. Goldfeder and Jonathan M. Freed, Trade Pacific PLLC, of Washington, DC, for Defendant-Intervenor National Refrigerants, Inc.

　　　Gordon, Judge: This action involves the final affirmative material injury determination by the U.S. International Trade Commission ("ITC" or the "Commission")

in the antidumping duty investigation covering hydrofluorocarbon ("HFC") blends and components from the People's Republic of China ("PRC"). See Hydrofluorocarbon Blends and Components from China, 81 Fed. Reg. 53,157 (Int'l Trade Comm'n Aug. 11, 2016) ("Final Determination"); see also Views of the Commission, USITC Pub. 4629, Inv. No. 731-TA-1279 (Final) (Aug. 2016), ECF No. 33-3 ("Views"); ITC Staff Report, Inv. No. 731-TA-1279 (July 8, 2016), as revised by Mem. INV-OO-062 (July 13, 2016), ECF Nos. 33-1 & 33-2 ("Staff Report").[1]

Before the court are the Views of the Commission on Remand, ECF No. 98 ("Second Remand Results") filed by the ITC pursuant to Arkema, Inc. v. United States, 42 CIT ___, 355 F. Supp. 3d 1197 (2018) ("Arkema II"), as well as the comments of Plaintiffs Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc. and Plaintiff-Intervenors The American HFC Coalition, and its members, (collectively, "Plaintiffs"). See Pls.' & Pl.-Intervenors' Remand Comments in Opp'n to the Commission's Remand Results, ECF No. 103 ("Pls.' Cmts."); see also Def.'s Resp. to Pls.' & Pl.-Intervenors' Remand Comments, ECF No. 107 ("Def.'s Resp."); Def.–Intervenor National Refrigerants, Inc.'s Opp'n Pls.' Cmts., ECF No. 109; Def.–Intervenors Shandong Dongyue Chemical Co. Ltd., Zhejiang Sanmei Chemical Ind. Co., Ltd., Sinochem Environmental Protection Chemicals Co., Ltd., and Zhejiang Quhua Fluor–Chemistry Co. Ltd.'s Opp'n Pls.' Cmts., ECF No. 111. The court has jurisdiction pursuant

---

[1] All citations to the Views, Second Remand Results, the agency record, and the parties' briefs are to their confidential versions.

Court No. 16-00179                                                                                                      Page 3

to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[2] and 28 U.S.C. § 1581(c) (2012). Familiarity with the court's decisions in Arkema II and Arkema, Inc. v. United States, 42 CIT ___, 290 F. Supp. 3d 1363 ("Arkema I"), is presumed.

In Arkema II, the court reviewed the ITC's first remand results to confirm that the agency had re-examined and provided further explanation with respect to the (1) dedicated for use and (2) differences in costs or value prongs of its semi-finished product analysis. See Arkema II, 42 CIT at ___, 355 F. Supp. 3d at 1199. The court concluded that although the ITC had corrected certain inaccuracies identified in Arkema I, the ITC had "failed to reasonably explain its findings in the dedicated for use and differences in value prongs." Id., 42 CIT at ___, 355 F. Supp. 3d at 1206. As a result, the court remanded the matter back to the ITC for reconsideration and further explanation of these two prongs, and if necessary, reconsideration of the agency's ultimate conclusion of its semi-finished product analysis that HFC Blends and HFC Components do not constitute a single like product. Id.

On remand, the ITC "reopened the administrative record for the purpose of requesting more precise data addressing the percentage of in-scope components that were used to produce in-scope [HFC] blends and out-of-scope refrigerant blends with respect to consideration of the 'dedicated for use' factor." See Second Remand Results at 3, 15–19. Additionally, the Commission provided additional explanation with respect

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

to its analysis of the "differences in value" factor and the use of average unit values ("AUVs") in continuing to find significant "differences in value between HFC components and HFC blends." See id. at 19–20. Plaintiffs challenge the reasonableness of the ITC's findings in the Second Remand Results as to the "dedicated for use" and "differences in value" factors, as well as the reasonableness of the Commission's overarching conclusion that HFC Blends and HFC Components are distinct domestic like products.

## I. Standard of Review

The court sustains the Commission's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620

(1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2019). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2019).

## II.  Discussion

### A.  Differences in Value

On remand the ITC again found that the cost/value prong of its semi-finished product analysis supported treating HFC components and blends as separate like products. See Second Remand Results at 19–20. In Arkema II, the court held that the Commission's newly emphasized reliance on the ratio of the AUVs of the U.S. industry's commercial shipments of HFC components to the AUVs of the U.S. industry's commercial shipments of HFC blends as a factor in determining "differences in value" on remand may be unreasonable in light of Plaintiffs' comments. 42 CIT at ___, 355 F. Supp. 3d at 1202. As a result, the court remanded this issue back to the agency so that the agency could address Plaintiffs' comments and provide further explanation, or if appropriate, reconsider its conclusion. Id. In the second remand, the Commission found that the value added by blending operations of the integrated producers Arkema, Chemours, and Honeywell in transforming HFC components into HFC blends ranged from [[ ]] percent to [[ ]] percent, while the percentage of value added for independent blender National was [[ ]] to [[ ]] percent. Second Remand Results at 19. The Commission also

found that the AUVs of the U.S. industry's commercial shipments of HFC components to the AUVs of the U.S. industry's commercial shipments of HFC blends ranged from [[  ]] percent to [[  ]] percent. Id. at 19–20. Based on these data, the Commission determined that the record regarding the AUVs and value added by blending operations indicated that there were differences in value between HFC blends and HFC components. Id. at 20.

Plaintiffs argue that the Commission has not explained why a comparison of AUVs is superior to comparing the actual costs of producing the HFC components with the total cost of the finished product. Pls.' Cmts. at 2. In addition, Plaintiffs contend that a comparison of the AUVs of U.S. industry's commercial shipments of HFC blends and HFC components does not reflect an "apples-to-apples" comparison between the value of the components and the value of the finished HFC blends. Id. at 2–3. The court disagrees.

As the Commission explained, an underlying assumption of Plaintiffs' arguments regarding AUVs appears to be that the Commission is confined to analyzing the "differences in costs or value" factor based on the cost of goods sold ("COGS"). See Pls.' Cmts. at 2–3. Plaintiffs overlook that the Commission's approach here is consistent with that of other investigations in which it likewise examined differences in value, as well as costs, between vertically integrated products in making a finding under this factor. See, e.g., Certain Oil Country Tubular Goods from India, Korea, the Philippines, Taiwan, Thailand, Turkey, Ukraine, and Vietnam, Inv. Nos. 701-TA-499-500 and 731-TA-1215-1217 and 1219-1223 (Final), USITC Pub. 4489, at 11 (Sept. 2014), available at 2014 WL

11804767. Similarly, it was reasonable here for the Commission to consider any differences between values of HFC blends and HFC components from a revenue perspective, i.e. "differences in value." In addition, the AUVs are based on commercial shipments of HFC blends and HFC components and represent arms-length sales. See Staff Report at Tables C-2a & C-2b. Thus, contrary to Plaintiffs' assertions, the AUVs represent "apples-to-apples" comparisons from a revenue perspective and indicate that the valuation of HFC Blends differ from the valuation of HFC Components on this record.

As the Commission also explained in the Second Remand Results, the use of AUVs was intended to determine the relative value for purchasers of HFC components and HFC blends in the marketplace and was not intended be a measure of the relative "value" to producers (i.e., profit margin) of the HFC blends and HFC components. Second Remand Results at 20. Consequently, profitability, or the lack thereof, does not detract from the Commission's analysis of the U.S. shipment AUV data, and the Commission reasonably concluded that an assessment of profitability is neither necessary nor relevant to the analysis of the "differences in value" factor in this case. Id.

As Plaintiffs have failed to show that the Commission's findings regarding the remanded aspects of the "different cost or value" factor are unreasonable, the court sustains the Second Remand Results with respect to this issue.

### B. Dedication for Use

On remand, the ITC again found that HFC components were not dedicated for use in the production of HFC blends:

> **Dedicated for Use.** As a preliminary matter, we emphasize

that the Commission has no established empirical threshold for its analysis of the "dedicated for use" factor. Indeed, given the fact-specific nature of the domestic like product inquiry, the Commission has not established a numerical threshold for determining whether a product is dedicated for use in the production of a downstream article. Instead, the Commission has based its finding for the "dedicated for use" factor, as it does for the domestic like product determination as a whole, on the facts presented in a particular investigation

In light of the Court's ruling that the [[ ]] percent figure used in the original determination and first remand determination was not reliable, and because the record lacked more precise empirical data, we reopened the administrative record to obtain further information about the extent to which HFC components are used to make HFC blends. These data indicate that a large majority of the domestic industry's production of HFC components were internally consumed, swapped with other domestic producers, or sold to independent HFC blenders for the production of in-scope HFC blends. In addition, they show that approximately [[ ]] percent of the domestic blend producers' consumption of HFC components over the three-year POI was consumed in the manufacture of out-of-scope refrigerant blends. Generally, parties agree and the record supports the contention that approximately one percent of HFC components are used for purposes other than the production of refrigerant blends. Thus, the percentage of HFC components used for purposes other than the production of in-scope HFC blends would be approximately one percentage point higher to account for these stand-alone uses, or about [[ ]] percent for the POI.

Although we have derived an average consumption figure for the three-year POI, the record also indicates that there is considerable variation in the proportion of HFC components used to produce out-of-scope refrigerants in different years of the POI and among different domestic producers. Petitioners argue that the Commission should focus its analysis on the consumption of HFC components in the production of out-of-scope refrigerant blends for 2014 and 2015, rather than 2013, because production of out-of-scope refrigerant blends declined sharply after 2013. They contend this decline is attributable to the EPA decision in April 2013 to permit an increase in the supply of R-22. As a result, they claim that a large and increasing percentage of HFC components was consumed in the production of HFC blends over the POI. While we are cognizant of the trend alleged by Petitioners, we have examined the data for the entire POI for our analysis, as annual consumption percentages can fluctuate due to extrinsic factors such as demand trends and patent expirations

Indeed, the record indicates that there were a substantial number of out-of-scope refrigerants produced during the POI that contained at least one in-scope HFC component. As described in the Commission Report, domestic producers Arkema, Chemours, Honeywell, National, and ICOR reported production of 25 out-of-scope HFC, HCFC/CFC, and HFO blends during the POI. This production totaled over 18,000 short tons. As further explained in the Commission Report, 23 of the 25 out-of-scope blends that the domestic producers reported producing during the POI contained at least one in-scope HFC component. These data contained in the Commission Report were compiled based on questionnaire responses submitted by the domestic producers regarding their production during the POI and are not simply formulas that have been registered with the American Society of Heating, Refrigeration, and Air Conditioning Engineers ("ASHRAE"), as has been suggested by petitioners. Consequently, the record shows that the domestic producers used in-scope HFC components during the POI for numerous uses other than in the production of the five in-scope HFC blends.

Further, HFC components R-32 and R-125 have stand-

> alone end uses in addition to being used as components for refrigerant blends. Specifically, R-32 was approved by the EPA in February 2015 for use in some self-contained air conditioning units. Also, R-125 has independent uses as a stand-alone refrigerant, in fire suppression systems, as a blanketing gas for aluminum and magnesium casting, and in foam blowing, smelting operations, semiconductor silicon wafer processing, and certain medical applications. As noted above, however, petitioners and respondent parties agree that no more than [[ ]] percent of in-scope HFC components are used as stand-alone products.
>
> We have evaluated the more comprehensive and reliable empirical data collected in this second remand proceeding concerning the percentage of HFC components used to produce out-of-scope blends and for stand-alone purposes together with the data concerning the number of out-of-scope uses. The record now shows that approximately [[ ]] percent of HFC components were used in out-of-scope applications during the POI. This percentage, however, differed greatly among individual producers and also was not consistent on a year-to-year basis for the industry as a whole. An analysis of those out-of-scope applications shows that, in addition to stand-alone uses, there were at least 23 different out-of-scope refrigerant blends produced by the domestic industry using in-scope HFC components during the years of the original investigation. Taken together, we find that HFC components are not dedicated for use in the production of in-scope HFC blends.

Second Remand Results at 15–19.

As indicated above, in the second remand the Commission collected additional data about the extent to which HFC components are used to make HFC blends and it determined, based on these new data, that approximately [[ ]] percent of the domestic producers' consumption of HFC components over the period of investigation ("POI") was used in the manufacture of out-of-scope blends. See id. at 15–16 & n.47. Taken together with the approximately one percent of HFC components used for purposes other than the

production of refrigerant blends, the Commission determined that the percentage of HFC components used for purposes other than the production of in-scope HFC blends was approximately [[ ]] percent for the POI. Id. at 16. The Commission also determined that a substantial number of out-of-scope refrigerant blends were produced during the POI that contained at least one in-scope HFC component. Id. at 16–17.

Plaintiffs contend that "the Data Collected on Remand Confirm the Testimony that Only a Small Percentage of HFC Components were used to Produce Out-of-Scope HFC Blends." See Pls.' Cmts. at 4–6. Plaintiffs additionally maintain that in the Second Remand Results, the ITC unreasonably presented the evidence on the record in a manner that "inflates the actual usage of HFC Components in Out-of-Scope Blends." Id. at 6–8. Lastly, Plaintiffs argue that the Second Remand Results are inconsistent with the ITC's precedent in other matters involving the Commission's semi-finished product analysis. Id. at 8–10. The court disagrees with Plaintiffs' contentions and concludes that the ITC's analysis of the "dedication for use" factor in the Second Remand Results was reasonable.

Plaintiffs acknowledge that, by their calculation, [[ ]] percent of in-scope HFC components were not used to produce in-scope refrigerant blends over the POI. Pls.' Cmts. at 4. Rather than argue that the [[ ]] percentage point difference between their calculation and the Commission's is material, Plaintiffs focus on minute aspects of the Commission's calculations. Initially, they contend that the Commission should have given greater weight to data for 2014 and 2015. Id. The Commission addressed Plaintiffs' argument, noting that the agency examined the trends identified by Plaintiffs, but that the

proper focus of its analysis was the record data covering the entire POI, and not specific periods or years within the POI. See Second Remand Results at 17. In this regard, the Commission observed that the annual consumption percentage can fluctuate within the POI due to other extrinsic factors such as demand trends and patent expirations. Id. at 17 & n.51. In any event, Plaintiffs have failed to demonstrate that the ITC acted unreasonably by considering data for the entire POI.

Plaintiffs also argue that the Commission improperly reduced the denominator in the usage rate calculation to determine the ratio of HFC components used to manufacture out-of-scope refrigerants by excluding HFC components "used or sold in unprocessed form." See Pls.' Cmts. at 6–7. The ITC addressed this contention fully by explaining that the ITC collected data on the quantity of HFC components produced by the U.S. industry that were "used or sold in unprocessed form," which comprised all the HFC components the domestic producers did not consume in the production of either in-scope HFC blends or out-of-scope refrigerant blends. Second Remand Results at 16 & n.47. The ultimate disposition of components reported by the U.S. industry as "used or sold in unprocessed form" during the POI could not be determined. Id. Because the Commission could not ascertain the final disposition of these components, the ITC reasonably excluded them from the denominator in the calculation because their inclusion within the denominator would not provide an accurate measure of the share of HFC components used for the production of out-of-scope refrigerant blends over the POI. Id.

The Commission further emphasized that, notwithstanding the small percentage of in-scope components used for purposes other than the production of in-scope blends,

"HFC components were used for purposes other than HFC blends." Second Remand Results at 21. In particular, the domestic producers' questionnaire responses showed there were at least 23 different out-of-scope refrigerant blends produced by the domestic industry using in-scope HFC components during the POI. See id. at 19, 21 & n.63. Plaintiffs cannot and do not contest the accuracy of this data on the record; rather, they maintain that the Commission afforded it undue weight in its semi-finished product analysis. See Pls.' Cmts. at 10. Plaintiffs may prefer that the Commission have weighed the evidence on the record differently, but they are not entitled to have the agency's reasonable determination remanded on that basis. See, e.g., Samsung Elecs. Co. v. United States, 39 CIT ___, ___, 70 F. Supp. 3d 1350, 1358 (2015) (explaining that for a plaintiff to prevail under substantial evidence standard on judicial review of fact-intensive issues, plaintiff must demonstrate that the administrative record supports "one and only one determination"); Tianjin Wanhua Co. v. United States, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) ("For the court to remand for Commerce to use [plaintiff's preferred] dataset, [plaintiff] needed to establish that [its preferred dataset], when compared with [the dataset selected by Commerce], is the one and only reasonable surrogate selection on this administrative record, not simply that [plaintiff's preferred dataset] may have constituted another possible reasonable choice." (citing Globe Metallurgical, Inc. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1269, 1276 (2012))).

The court also rejects Plaintiffs' argument that the ITC's "dedication for use" analysis in the Second Remand Results is contrary to the Commission's prior precedent. See Pls.' Cmts at 8–10. In Arkema I, the court considered and rejected Plaintiffs'

contentions that the ITC's "dedication for use" analysis conflicted with its precedent involving a comparable analysis of other products. See Arkema I, 42 CIT at ___, 290 F. Supp. 3d at 1370 ("The court agrees with the ITC that it did not, as Plaintiffs contend, adopt a 100 percent threshold in considering whether HFC Components are dedicated for use in the production of HFC Blends. Rather the Commission based its 'dedicated for use' finding on the record as a whole rather than a simple numerical threshold. Accordingly, the ITC reasonably explained the differences between this proceeding and its prior 'dedicated for use' treatment." (internal citation omitted)).

Plaintiffs seek to relitigate this issue, arguing that the Commission's decision to continue to find that HFC Components and Blends constitute separate like products is unreasonable in light of the Commission's precedent and its finding on second remand of a reduced figure for the percentage of HFC Components not used in the production of HFC Blends. See Pls.' Cmts. at 8–10. The court remains unpersuaded. The Commission on remand reopened the record to find a more reliable estimation of the percentage of HFC Components consumed in the production of out-of-scope blends, and it found that the revised figure of [[  ]] was sizeable enough to conclude that HFC Components are not "dedicated for use" in the production of HFC Blends. See Second Remand Results at 15–19. The Commission also explained that its conclusion that HFC Components and Blends are separate like products was based on an analysis of "all five factors of the Commission's semifinished products analysis including the Commission's findings on the three factors affirmed by the Court in Arkema I, with no one factor being dispositive." Id. at 20–21. While the ITC acknowledged "that the substantial majority of in-scope HFC

components are used to produce HFC blends;" it explained that based on its review of the record as a whole, the "facts weigh in favor of finding that HFC components are not dedicated for use in the production of in-scope HFC blends." Id. at 21. The court has already rejected Plaintiffs' contention that the ITC has inexplicably deviated from its precedent, and Plaintiffs have subsequently failed to demonstrate that the ITC's analysis on this issue was unreasonable.

Finally, while the court concludes that the ITC's analysis and findings with respect to the "dedication for use" and "differences in value" prongs of its semi-finished product analysis in the Second Remand Results were reasonable, the court also concludes that the Commission reasonably reached its overarching determination that "HFC blends and HFC components are distinct domestic like products." See Second Remand Results at 20. As noted in Arkema I, the court's purpose for remanding the ITC's separate like products determination was to ensure that the agency was not relying on inaccurate data and to gain clarification "as to how much weight the ITC placed on this data and how it weighed the [each] prong in comparison to the other four prongs in reaching the ultimate determination." See Arkema I, 42 CIT at ___, 290 F. Supp. 3d at 1370.

After reviewing the record as a whole and the agency's explanation of its analysis in the second remand, the court concludes that the ITC has reasonably addressed both of the court's concerns. First, by gathering more precise data, the agency has ensured that it is not reaching conclusions based on admittedly erroneous data. See Second Remand Results at 15–19. Second, the ITC provided additional explanation as to how the agency considered the entirety of the record and reasonably reached its determination

that HFC Components and Blends are separate like products based on all five factors of its semi-finished product analysis. <u>See</u> <u>id.</u> at 20–25.

### III.  Conclusion

For the foregoing reasons, the court sustains the <u>Second Remand Results</u>. Judgment will enter accordingly.

_/s/ Leo M. Gordon_____<br>
Judge Leo M. Gordon

Dated: July 3, 2019
         New York, New York